UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JAMES BRYANT,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:15-cr-00132 (VLB) |

### ARTICULATION OF THE COURT'S RULING ON
### DEFENDANT'S TOTAL OFFENSE LEVEL AND CRIMINAL HISTORY CATEGORY

The Court sentenced Defendant James Bryant on December 19, 2018. In doing so, the Court considered Defendant's United States Sentencing Guidelines range, which is determined by his total offense level and his criminal history category ("CHC"). The parties disagree about Defendant's criminal history calculation. Defendant argues that his state court conviction and sentence for tampering with evidence—cleaning up evidence of the murder of Edward Brooks in the Miller house basement—is for conduct relevant to the instant offense and therefore is not a "prior sentence" which should be included in the criminal history calculation. The Government argues that Defendant's state court sentence is not related to Defendant's federal conviction and therefore should be included in his criminal history calculation. The Court agrees with Defendant for the reasons explained below.

1

## Background

On July 23, 2015, James Bryant was indicted in this case for conspiracy to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) and 846. *See* [Dkt. 8 (Indictment)]. On March 21, 2016, Bryant pled guilty to that count. *See* [Dkt. 77 (Minute Entry for Change of Plea Hr'g); Dkt. 80 (Plea Agreement)].

The presentence report ("PSR") prepared by Probation in advance of Bryant's sentencing includes two sections under "The Offense Conduct," one addressing "The Homicide and Explosion" and the second addressing "The Conspiracy to Distribute Cocaine Base." [Dkt. 340 (Final PSR) at 5-10]. The Court finds that Bryant's conduct described in both sections is relevant to the crime Bryant is now being sentenced for and will succinctly describe the salient facts.

On July 4, 2015, there was an explosion on Wintergreen Avenue in Hamden, Connecticut. *Id.* at ¶ 7. An investigation of the explosion uncovered that the explosion had impacted a body, that of Edward Brooks. *Id.* at ¶ 11. Prior to the explosion, Brooks had sustained three gunshot wounds. *Id.* at ¶ 9. Brooks's identity led investigators to his known associate, Christopher Miller, who resided at 59 Front Avenue, West Haven, Connecticut (the "Miller house"). *Id.* at ¶ 12. The police were familiar with the Miller house, as a confidential informant had made numerous cocaine base purchases there. *Id.* at ¶ 13.

At the Miller house, investigators observed a car similar to the one described by witnesses at the scene of the explosion and further, upon execution of a search and seizure warrant, found bomb making and drug distribution materials. *Id.* at ¶¶

13-14. The investigators also noted eight surveillance cameras on the property. *Id.* at ¶ 14-18. Footage from the surveillance camera capturing the internal staircase leading from the first floor to the basement showed Miller, Brooks, and Bryant walking down the stairs at the time stamped time of 4:11 a.m.[1] *Id.* at ¶ 19. Bryant returned upstairs at 4:12 a.m. along with Brooks, who shortly returned downstairs. *Id.* At 4:19 a.m. Brooks returns upstairs with Maurice Wearing at 4:19 a.m. *Id.* At this point, Miller can be seen standing at the bottom of the stairs rubbing his hands together before walking off camera. *Id.* Brooks returns downstairs and walks off camera at 4:21 a.m. *Id.* Brooks is not seen on camera again. *Id.* Miller is seen walking up the stairs at 4:26 a.m. carrying a firearm and a silencer. *Id.* The footage ends at 4:34 a.m. and picks up again at 12:06 p.m. *Id.* at ¶ 20.

Miller was charged with and pled guilty in state court to the murder of Brooks, use of a firearm for a felony, and tampering with physical evidence related to the above facts. *See Connecticut v. Miller*, Dkt. No.:AAN-CR15-0089767-T. Miller pled guilty in federal court to the charge of possession of a firearm and explosive device in furtherance of a drug trafficking crime. *See United State v. Miller*, Case No. 3:15-cr-00132 (VLB). In state court, Wearing has been charged with conspiracy to commit the murder of Brooks, hindering prosecution in the second degree, and tampering with physical evidence related to the above facts. *See Connecticut v. Wearing*, Case No.: 07150039. Wearing pled guilty in federal court to the charge of possession of an explosive by a convicted felon. *See United States v. Wearing*,

---

[1] All surveillance footage time references are from the time stamps, which investigators determined to be one hour and two minutes behind Eastern Daylight Time. *See* [Dkt. 340 at ¶ 18].

3

Case No. 3:15-cr-00132(VLB). Bryant entered an Alford plea in state court for tampering with physical evidence related to the above facts and was sentenced to 30 months in jail on June 5, 2018. *See* [Dkt. 340 at ¶ 59].

After July 4, 2015, investigators interviewed witnesses with information regarding narcotics trafficking activities at the Miller house. *Id.* at ¶ 24. Police had a criminal informant who had been purchasing cocaine base from the Miller house for more than a year and who recorded a number of purchases from Miller out of the Miller house. *Id.* at ¶ 25. The criminal informant led investigators to determine that Wearing acted as Miller's drug supplier. *Id.* at ¶ 26. Text messages recovered from Miller's cell phone pursuant to a search warrant showed that Miller was in frequent contact with Wearing regarding the drug supply, that Miller's wife, Natali Martinez, and mother, Deborah Miller, were involved in the drug business, and that Miller would deploy Bryant and Brooks to deliver crack cocaine to customers. *Id.* at ¶ 29. The investigation revealed that Bryant was a member, together with the others mentioned, of the drug distribution conspiracy operated out of the Miller house and led by Christopher Miller from September 2014 to July 2015. *Id.* at ¶ 30.

In federal court, Bryant was charged with conspiring with Miller and the others mentioned above to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), to which he pled guilty on March 21, 2016. Bryant is currently before the Court to be sentenced on that conviction.

The Government's Sentencing Memorandum and Probation's Addendum to the PSR represent that Bryant's total offense level for this conviction is 25.[2] *See* [Dkt. 347 at 3-4; Dkt. 349 (Addendum to PSR) at 1-2]. They also suggest that his CHC is IV, taking into account the additional points for Bryant's 30-month state court sentence for tampering with physical evidence. *See* [Dkt. 347 at 4; Dkt. 340 at ¶¶ 60-61]. Defendant's Sentencing Memorandum argues that Bryant's CHC is III, because his sentence for tampering with physical evidence is for conduct relevant to the instant drug conspiracy offense and therefore cannot be included in the criminal history calculation. *See* [Dkt. 342 at 6-7].

## Analysis

A defendant's CHC is calculated based on, *inter alia*, his prior sentences. *See* United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1. The term "prior sentence" here "means any sentence previously imposed . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 Application Note 1. Under § 1B1.3, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.2(a)(1)(A), (a)(2); *see also*

---

[2] Defendant's Sentencing Memorandum uses the offense level agreed to in the plea agreement, 29. *See* [Dkt. 342 at 6]. After Defendant filed his Sentencing Memorandum, the Government suggested, and Probation agreed, that a mitigating role adjustment, a 4-level reduction, is appropriate as a result of Defendant's minor role in the criminal activity. *See* [Dkt. 347 at 3-4].

5

*United States v. Thomas*, 54 F.3d 73, 83 (2d Cir. 1995). "Thus, a sentence imposed for conduct that was part of the same course of conduct as the offense of conviction is not a 'prior sentence' within the meaning of Section 4A1.1." *United States v. Brennan*, 395 F.3d 59, 70 (2d Cir. 2005).

In the Second Circuit, "[a]cts may be found to be part of the 'same course of conduct' if the defendant engaged in a repeated pattern of similar criminal acts, even if they were not performed pursuant to a single scheme or plan." *Thomas*, 54 F.3d at 84; *see also United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir. 1991) ("The 'same course of conduct' concept . . . looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected together' by common participants or by an overall scheme.").

Persuasively, the Eighth Circuit has guided that "[c]onduct resulting in a prior conviction is not relevant conduct to the instant offense when it is a 'severable, distinct offense.'" *United States v. Stone*, 325 F.3d 1030, 1032 (8th Cir. 2003) (quoting *United States v. Davidson*, 195 F.3d 402, 409 (8th Cir. 1999)). "Factors useful in determining whether the two offenses are severable and distinct are temporal and geographic proximity, common victims, common scheme, charge in the indictment, and whether the prior conviction is used to prove the instant offense." *Id.* (citing *United States v. Copeland*, 45 F.3d 254, 256-57 (8th Cir. 1995)).

The offense of conviction here is conspiracy to distribute and to possess with intent to distribute cocaine base. The disputed prior sentence is Bryant's state court sentence for tampering with physical evidence. Thus, the question is whether the conduct for which Bryant was sentenced in state court was part of the

6

same course of conduct as the drug conspiracy conduct for which this Court now sentences him.

Bryant was part of a conspiracy to distribute drugs along with Chris Miller, Maurice Wearing, Edward Brooks, and others. Wearing supplied Miller with drugs. And Bryant and Brooks were drug runners for Miller. Bryant and Brooks both also lived in the Miller house, out of which the Miller drug operation was run, for periods of time. One night, after learning that Brooks was using drugs, making him an unreliable and potentially risky runner, Miller killed Brooks in the basement of the Miller house. Bryant and Wearing, among others, assisted Miller in the concealment of the murder of Brooks.

This clean-up and concealment was in furtherance of the drug conspiracy. Both the drug conspiracy and the clean-up occurred in the same place and at the same time by the same people. The conspirators cleaned-up the murder to avoid detection and investigation of the murder and the murder scene. Such an investigation would have at least temporarily, and possibly permanently, curtailed operation of the drug conspiracy. Thus, Bryant's participation in the concealment of the murder was one in a continuing series of acts done by him in furtherance of the drug conspiracy. Because the clean-up conduct, for which Bryant was sentenced in state court, was part of the same scheme or plan as the drug conspiracy conduct, it is not properly included in Bryant's CHC calculation.

This is consistent with decisions by the Second and Eighth Circuits on this issue. In *United States v. Thomas*, Defendants Thomas and Reese were charged and sentenced for uttering forged money orders, and conspiring to do so, from

7

April 1990 to May 1991. 54 F.3d at 83. Both Thomas and Reese argued that his prior conviction was for conduct related to the stolen money orders at issue in the current case. *Id.* Thomas was previously sentenced for possessing a car purchased with forged money orders. *Id.* Reese was previously sentenced for larceny and possession of property deemed stolen because it was purchased with stolen money orders. *Id.* The Court concluded that these prior sentences "arose out of purchases made between June and October 1990 with some of the forged money orders that were at issue in the present case," and were therefore "for instances of uttering securities at issue here during the period at issue here." *Id.* "Since these prior convictions encompassed some of the conduct for which Thomas and Reese were convicted in this case, the sentences previously imposed for that conduct could not properly be considered 'prior' sentences within the meaning of Guidelines § 4A1.2(a)(1) and should not have been taken into account in calculating their respective CHCs." *Id.*

The Second Circuit came to a similar conclusion in *United States v. Brennan*. 395 F.3d at 70-71. The defendant had previously been sentenced for bankruptcy fraud for concealing bearer bonds and casino chips and for money laundering of the bonds and their proceeds. *Id.* at 63. The court included that sentence in the CHC calculation when sentencing the defendant for criminal contempt for violation of a freeze order on the defendant's assets—the defendant had failed to declare certain assets and made transfers in violation of the freeze order. *Id.* at 63-64. The Second Circuit found that the defendant's bankruptcy fraud and criminal contempt "were part of the same course of conduct, in that they constituted a repeated

pattern of similar criminal acts." *Id.* at 70 (internal quotations omitted). "All involved concealing, laundering, investing, and using of [the defendant's] assets for [his] own purposes without the knowledge or consent of the bankruptcy estate or [his] judgment creditors." *Id.* As a result, the Second Circuit concluded that the sentencing court should not have imposed criminal history points based on the defendant's bankruptcy fraud sentence. *Id.*

Like in *Thomas* and *Brennan*, here, Bryant's prior sentence arose out of conduct relevant to the current conviction—had these individuals not been involved in and seeking to maintain and further the Miller drug conspiracy, the murder likely would not have taken place and there would be no need for the cover up. The conduct at issue in both the prior sentence and this conviction were part of a common scheme and for the purpose of preserving and furthering the drug conspiracy.

In contrast, the Eighth Circuit in *United States v. Stone* concluded that the defendant's conduct leading to his driving while intoxicated on marijuana ("DWI") conviction and sentence was in no way related to the conspiracy to manufacture and distribute methamphetamine the court had sentenced him for in the present case. 325 F.3d at 1031-32. The court found that the defendant's case was not analogous to the facts in *United States v. Weiland*, 284 F.3d 878, 882-84 (8th Cir. 2002), where the court found that Weiland's state court conviction for possession of marijuana was relevant conduct—part of a common scheme or plan—to his federal charge for conspiracy to distribute marijuana and methamphetamine. *Stone*, 325 F.3d at 1032. This was because "[n]either the distribution nor the

possession of marijuana was included in Stone's indictment" for conspiracy and the DWI was therefore severable from the drug conspiracy conduct. *Id.*

A marijuana DWI is undeniably unrelated to a methamphetamine distribution conspiracy, as they do not involve similar conduct, are not part of a common scheme or plan, and the conduct was not aimed at the same purpose. The distinctions between the facts in *Stone* and those here are evident and, unlike in *Stone*, Bryant's tampering with evidence conviction is directly related to and cannot be severed from the drug conspiracy conduct for the reasons discussed above.

Finally, the clean-up conduct does qualify for a 2-level obstruction adjustment to Bryant's offense level under Guideline § 3C1.1, which prescribes that an adjustment should be made for obstructing or impeding the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to either the defendant's offense of conviction and any relevant conduct or a closely related offense. U.S.S.G. § 3C1.1. Application Note 1 to § 3C1.1 states that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." The Court finds this adjustment applicable here and concludes that Bryant's resulting total offense level is 27.

## Conclusion

For the foregoing reasons, the Court finds that Bryant's CHC is III, rather than IV, and his total offense level is 27. Based on these parameters, the Guidelines range is 87 to 108 months imprisonment.

IT IS SO ORDERED
/s/
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 19, 2018